## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

THOMAS HODGE,                    )
                                 )
              **Petitioner,**               )
                                 )
     **v.**                       )          **No. 3:10-00172**
                                 )          **Judge Sharp**
UNITED STATES OF AMERICA,        )
                                 )
            **Respondent.**               )

## MEMORANDUM

This is an action under 28 U.S.C. § 2255 which was originally filed *pro se* by Petitioner, Thomas Hodge, who is serving a 79-month prison sentence imposed by Judge Echols. The case has a somewhat tortured procedural history (detailed below), but is presently before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence (Docket Entry No. 1), his Motion to Amend (Docket No. 51), his Amended § 2255 Petition (Docket No. 36) and his Motion to Schedule Evidentiary Hearing and/or to Allow Oral Argument (Docket No. 57). Those Motions and the merits of Petitioner's Section 2255 claims have been fully briefed by the parties (Docket Nos. 6, 13, 36, 38, 40, 49, 51, 56, 57 & 58).

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On December 6, 2006, a federal grand jury returned an Indictment against Petitioner charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. Petitioner was arrested pursuant to the warrant on December 20, 2006. At the time of the arrest, Petitioner was serving a six-year sentence at the Hardeman Correctional Facility for a probation violation and an aggravated assault charge.

Following his initial appearance and arraignment in federal court on December 20, 2006, Magistrate Judge Griffin entered an Order indicating that Petitioner had appeared, entered a plea of not guilty, and represented that he wanted to remain in state custody and waive his rights under the Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C. App. 2. (Case No. 3:06-00229, Docket No. 9 at 1). Petitioner was returned to state custody.

After "lengthy and intensive negotiations" (Id., Docket No. 36-1 at 2) among the parties, Petitioner signed a "Petition to Enter a Plea of Guilty" on May 15, 2007, in which he agreed to plead guilty to the Indictment. In doing so, Petitioner acknowledged he had discussed his case with counsel, he understood that he faced a potential sentence of up to ten years in prison, but he "freely and voluntarily" wanted to plead guilty pursuant to the attached Plea Agreement. (Id., Docket No. 17 at 3).

The Plea Agreement, which Petitioner signed that same day, gave the particulars of the agreement. So far as pertinent to the present dispute, the Plea Agreement contained a specific section relating to sentencing that provided:

> Pursuant to Rule 11(c)(1)(C), the parties agree that the sentence to be imposed will be a sentence in the middle-point of the applicable U.S.S.G. guideline range as determined by the Court and that such sentence shall be imposed concurrently with the sentence the defendant is presently serving in the state of Tennessee in Case No. 2005-C-1611 and 2003-B-1021 from Davidson Count Criminal Court. In light of the concessions in this Plea Agreement, the parties agree that [~~any sentencing~~] the agreed sentence[1] within the applicable U.S.S.G. range is per se reasonable.

(Id. Docket No. 17 at 11-12).

The Plea Agreement also contained a section relating to the "Sentencing Guideline

---

[1] To better reflect the parties' agreement, the bracketed language was replaced with the underlined language during the change of plea colloquy before Judge Echols. The Government, defense counsel, and Petitioner initialed the change.

2

Calculations" that indicated the base offense level was 24, which would be increased by two levels because the firearm was stolen. The parties further agreed there would be no enhancement for possession in relation to another felony, and Petitioner would receive a three point reduction for acceptance or responsibility. (Id. at 5-6).

At a change of plea hearing held on May 15, 2007, Judge Echols thoroughly explained Petitioner's rights and told him that, by pleading guilty, Petitioner was waiving, among other things, the right to have the Government prove his guilt beyond a reasonable doubt before a jury of his peers. Judge Echols also explained the possible punishment, including the maximum penalty prescribed by statute. Petitioner was also informed that, pursuant to the Plea Agreement, (1) he would receive three points for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) & (b); (2) there would not be a four-level enhancement for possession of a firearm in relation to another felony under U.S.S.G. § 2K2.1(b)(6); (3) Petitioner would be sentenced at the mid-point of the applicable U.S.S.G. guideline range as determined by the Court; (4) the mid-point sentence would be imposed concurrently with the sentence the Petitioner was then serving as a result of his state court convictions; and (5) the Plea Agreement was a binding agreement under Fed. R. Crim. P. 11(c)(1)(C), meaning that, if the Court accepted the plea and imposed a term incarceration as provided for in the Plea Agreement, Petitioner would not be allowed to withdraw his plea under Fed. R. Crim. P. 11(d). Petitioner acknowledged that he understood all of those particulars, and that each of the provisions of the Plea Agreement had been explained to him by counsel.

In both the Plea Agreement and at the plea hearing, Petitioner represented that no promises, threats, or representations had been made to cause him to plead guilty, and that the Plea Agreement contained all of the agreements between the parties. Finally, the Plea Agreement provided that,

aside from the "promises, agreements, and conditions" contained in the Plea Agreement, the parties would not enter into any others, unless the same was memorialized in writing and signed by all of the parties. (Id. at 10).

After thoroughly discussing Petitioner's rights and the provisions of the Plea Agreement, Judge Echols accepted Petitioner's guilty plea. In doing so, he specifically found that Petitioner was

> . . . aware of the terms of the Petitioner to Enter a Guilty Plea, as well as the Plea Agreement.
> He's stated that he's read these documents, he's discussed them carefully with his lawyer, and he understands them. The Court finds he's not only aware of these agreements, but that he adopts the terms of the Plea Agreement as his own.

(Id. Docket No. 25 at 30). Judge Echols then had the parties sign the Plea Agreement and initial each page.

A sentencing hearing was held on September 24, 2007. Prior to the hearing, the parties were provided with copies of the Presentence Investigation Report, and they informed Judge Echols that they had no objections to the Report. Judge Echols accepted the Report and its calculations which provided that the base offense level was 22 to which two points were added for possession of a stolen firearm, thereby increasing the offense level to 24. In accordance with the Plea Agreement, there was no enhancement for possession of a firearm in relation to another felony, and Petitioner was granted a three-level reduction for acceptance of responsibility, resulting in an adjusted base offense level of 21. As for criminal history, Petitioner was assessed 12 points which Judge Echols observed (both at the Sentencing Hearing and in his Statement of Reasons) probably understated his criminal history because Petitioner had fourteen adult convictions. In any event, with an adjusted base offense level of 21 and a Criminal History Category V, the guideline range was from 70 to 87 months.

Judge Echols sentenced Petitioner to a term of imprisonment of 79 months which, in accordance with the Plea Agreement, was at the mid-point of the guideline range. Judge Echols also ordered, in accordance with the Plea Agreement, that the sentence run concurrent to the state sentence Petitioner was then serving.

Towards the end of the Sentencing Hearing, counsel for Petitioner asked Judge Echols to recommend to the Bureau of Prisons that Petitioner be given jail credit on his federal sentence for the time between when he was arrested by state authorities on the state charges (April 9, 2005), until the time that he was arrested by United States Marshals in this case (December 20, 2006). Upon inquiry by Judge Echols, the Government stated that it "does not have a particular position" on the jail credit issue. (Id. Docket No. 26 at 10). As a part of the formal sentencing, Judge Echols stated:

> The Court's recommendation will be that he be given credit for his jail time spent in federal custody. The Court will not speak to the state charges and will leave that to the Bureau of Prisons.

(Id. at 56).

The "Judgment in a Criminal Case" was entered on December 4, 2007, and Petitioner filed no appeal. Thus, Petitioner's conviction became final on December 14, 2007 which is the time that his appeal rights expired.[2]

On February 17, 2010, Petitioner "filed" his Motion to Vacate under Section 2255 by placing it in the prison mailing system. Petitioner's Motion contained one claim, which was that counsel was ineffective in failing to raise "I.A.D. violations." (Docket No. 1 at 4). Petitioner's sole request for relief was that the judgment be vacated, and the Indictment dismissed. (Id. at 13).

---

[2]At the time of sentencing, Fed. R. App. P. 4(b)(1)(A) required that a criminal appeal be filed within ten days of entry of judgment.

In response, the Government moved to dismiss on the grounds that the Motion to Vacate was untimely under the one-year provision in 28 U.S.C. § 2255(f), and was procedurally barred because Petitioner did not raise his claim on appeal. Alternatively, the Government requested that it be granted more time to respond to the merits of the Motion.

In an Order entered June 18, 2010, Judge Echols stated that, because Petitioner claimed he was in state custody until September 2009, the Court would deny the Government's motion to dismiss. In doing so, however, Judge Echols indicated the denial was without prejudice and that "[i]f the Government can show that Hodge was an inmate in federal custody who could have filed his § 2255 Motion within one year after December 14, 2007, the Court will reconsider its ruling on this issue." (Docket No. 10 at 3). Judge Echols also rejected the Government's procedural default argument. The Government was then directed to file a response directed to the facts underlying the limitations issue, as well as a response to the merits of Petitioner's claim

In accordance with Judge Echols' Order, the Government filed another response to Petitioner's Motion to Vacate on July 14, 2010. (Docket No. 13). The Government argued that the ineffective assistance of counsel claim failed on the merits because Petitioner represented to Magistrate Judge Griffin that he wanted to remain in state custody and waive his rights under the IAD. The Government also argued that, under Sixth Circuit law, the one year period under Section 2255(f) begins to run when a person is in custody, whether the custody is state or federal.

On July 31, 2010, Judge Echols retired from the bench and this case was reassigned to Judge Haynes. After reviewing the file, Judge Haynes appointed counsel for Petitioner (Docket No. 17). Shortly thereafter, Judge Haynes recused himself, and the case was reassigned to Judge Trauger.

On February 28, 2011, after several extensions of time, Petitioner filed a "Reply and

Amended § 2255 Petition." (Docket No. 36). In that filing, Petitioner recognized that his original

ineffective assistance of counsel claim raised an alleged IAD violation, but argued that his "actual

complaint *ab initio* has been that he was not credited for certain time spent in federal custody" and

that he was "now restat[ing] his claim through counsel." (Id. at 2). Specifically, Petitioner asserted

that "he was denied his Sixth Amendment right to effective assistance of counsel because his trial

counsel did not file a motion for adjustment to ensure for him credit in his sentence from the time

of his arrest by federal authorities (December 20, 2006) until imposition of his sentence (September

24, 2007) or 278 days." (Id. at 2). As relief, Petitioner requested that the Court enter an Order

adjusting his sentence, and crediting him 278 days on his federal sentence.

In his Reply and Amended Petition, Petitioner additionally claimed that the Bureau of

Prison's original calculations was very favorable, affording him credits in addition to time in jail

after being arrested on the federal charges. However, once Petitioner was actually in federal prison,

the Bureau of Prisons recalculated the release date and removed all credits for any time prior to the

imposition of the sentence by Judge Echols. Since that recalculation was done sometime after

September 9, 2009 (when Petitioner was released from state prison and sent to federal prison), he

argues that his February 17, 2010 Motion to Vacate is timely.

The Government then filed a "Third Response to Petitioner's Motion to Vacate" (Docket No.

40) on May 1, 2011, in which it argued that Petitioner's Motion should be dismissed because both

the original Motion and the Amended Motion were filed well outside the one year statute of

limitations period, the amended claim did not relate back to the original claim, and there was no

basis for equitable tolling. On the merits, the Government also argued Petitioner could not establish

prejudice because Judge Echols made clear Petitioner's criminal history was unrepresented and,

therefore, it is unlikely that Judge Echols would have ordered that Petitioner be given credit for the time spent in state custody after his arrest on the federal charges.

Petitioner filed another Reply (Docket No. 49) on June 14, 2011, in which he reiterated the points made in his Reply and Amended Petition. He also argued that the one-year limitations period should run from March 30, 2010 (rather than December 14, 2007) because that was when Petitioner's appeal regarding his jail credits was finally resolved in the BOP administrative proceedings. Less than a week later, Petitioner filed a Motion to Amend (Docket No. 51) in which he sought to replace his original Motion to Vacate with the Amended Petition filed on February 28, 2011.

The case was reassigned to the undersigned on June 21, 2011, as provided in Administrative Order No. 138 which reallocated cases among the sitting active judges in this district. The Government then filed its Fourth Amended Response to Petitioner's Motion and Opposition to Petitioner's Motion to Amend, reiterating many of the arguments already made. (Docket No. 56). This was followed by Petitioner's "Motion to Schedule Evidentiary Hearing and/or to Allow Oral Argument" (Docket No. 57), and the Government's "Fifth Response," which objected to the Amended Petition and Petitioner's request for a hearing . (Docket No. 48).

## II. <u>APPLICATION OF LAW</u>

As the lengthy (but necessary) recitation of the facts and procedural history suggests, this case presents numerous issues primarily related to the timeliness of Petitioner's Motion to Vacate and subsequent attempt to amend that Motion. Ultimately, the Court concludes that (1) Petitioner's original Motion to Vacate was untimely, but, even if it was timely, it is without merit; (2) because the initial Motion to Vacate was untimely, the Amended Petition is untimely, but, even if the original

Motion was timely, the Amended Petition comes too late and does not relate back; (3) equitable tolling is not appropriate in the circumstances of this case; and (4) even if the Amended Petition was timely or equitable tolling applied, the Amended Petition is without merit.

## A. **Original Motion to Vacate**

A one-year limitations period applies to Motions to Vacate under Section 2255. That period runs from the latest of

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). Petitioner's conviction became final on December 14, 2007, the date that marked the expiration of the 10-day time period when he could have filed a timely appeal of the December 4, 2007 "Judgment in a Criminal Case." See, Fed. R. App. P. 4(b)(1) (2007 edition).

When he filed his original Motion to Vacate, Petitioner conceded the Motion was not filed within a year of his conviction becoming final. He asserted, however, that, because he was in state custody until September 9, 2009, he was unable to file within the one-year period provided by Section 2255(f).

The only possible §2255(f) provision Petitioner's argument fits is subsection (2), but there is no suggestion that his continued state custody was an impediment resulting from *unlawful* action by the government. Regardless, the Sixth Circuit has held that "Section 2255 allows prisoners to

petition their sentencing court to correct or invalidate sentences imposed upon them provided that they are 'in custody under a sentence of a court established by Act of Congress' and provided that they make their petitions prior to the expiration of a one-year statute of limitations." Ospina v. United States, 386 F.3d 750, 752 (6th Cir. 2004) (quoting, 28 U.S.C. § 2255). Thus, "[a] prisoner is in custody for the purposes of § 2255 when he is incarcerated in either federal or state prison, provided that a federal court has sentenced him." Id. Pursuant to Ospina, the mere fact that Petitioner was originally in state custody was not a bar to filing, and his original Motion to Vacate was untimely.

In arriving at this conclusion, the Court acknowledges Judge Echols' June 18, 2010 Order in which he denied the Government's request for dismissal on timeliness grounds and which might be viewed as the law of the case. However, Judge Echols made clear the ruling was preliminary, and, in fact, invited the Government to offer further evidence, at which point the Court would consider revisiting the issue. True, Judge Echols contemplated that the Government would present evidence regarding when Petitioner actually entered federal custody, but he did so in the context of a generic argument from the Government that because Petitioner was sentenced on December 4, 2007, any claim for collateral relief began running ten days after that date. The Government did not raise the specific argument that, under Sixth Circuit law, the limitations period began running regardless of where Petitioner was housed, and, understandably, Judge Echols apparently did not consider that argument. The law of the case doctrine is not a bar where the precise issue has not been explicitly or impliedly resolved, Westside Mothers v. Olszewski, 454 F.3d 532, 538 (6th Cir. 2006), and, simply as a matter of comity, not power, "operates only to limit reconsideration of the same issue . . . decided by a predecessor judge from the same court[.]" Fagan v. City of Vineland,

22 F.3d 1283, 1290 (3d Cir. 1994); see, O'Keefe v. Noble Drilling Corp., 347 Fed. Appx. 27, 30 (5th Cir. 2009) (citation omitted) ("'the law of the case doctrine is a rule of convenience and utility and yields to adequate reason, for the predecessor judge could always have reconsidered his initial decision so long as the case remained in his court.'").

In any event, Petitioner's ineffective assistance of counsel claim as set forth in his original Motion to Vacate is without merit. To establish ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Id.

A court need not address both parts of the Strickland test if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697. In evaluating an ineffective assistance of counsel claim, the Court "strongly presumes" counsel to have "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

Petitioner's ineffective assistance of counsel claim based upon an alleged violation of the IAD is a non-starter. The IAD is a compact entered into by most states (including Tennessee) and the United States to establish procedures for resolving pending criminal charges among various jurisdictions. See, New York v. Hill, 528 U.S. 110, 111 (2000). It contains

what has come to be called the "anti-shuttling" provision. That provision requires that when an individual who has "entered upon a term of imprisonment" in one jurisdiction (the "sending state"), is removed to another jurisdiction (the "receiving state") pursuant to a detainer, he must be tried in the receiving state before being returned to the sending state; if he is not, the indictment in the receiving state "shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

United States v. Taylor, 173 F.3d 538, 540 (6th Cir. 1999).

However, rights under the IAD may be waived, Hill, 528 U.S. at 114-116, and an ineffective assistance of counsel claim based on the IAD will not lie where there is such a waiver. See, Wells v. Withrow, 195 Fed. Appx. 425, 428-29 (6th Cir. 2006). In this case, Magistrate Judge Griffin entered an Order specifically finding that Petitioner waived his rights under the IAD during his initial appearance, a conclusion that is borne out in the transcript of that proceeding. Neither in his original Motion to Vacate, nor in any filing since, has Petitioner challenged this conclusion. Besides, the United States Supreme Court in Tollett v. Henderson, 411 U.S. 258, 267 (1973) "specifically held that a knowing and voluntary guilty plea constitutes a waiver of all nonjurisdictional challenges to a conviction," and "[f]ederal courts have uniformly concluded the rule set out in Tollett applies to challenges to a conviction based on alleged violations of the IAD." Goodloe v. Smelser, 384 Fed. Appx. 779, 781(10th Cir. 2010) (citing, Baxter v. United States, 966 F.2d 387, 389 (8th Cir.1992); United States v. Fulford, 825 F.2d 3, 10 (3d Cir.1987); Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir.1985)). Petitioner has not shown counsel was deficient, or that he suffered prejudice because the relief requested – dismissal – was precluded by his knowing and voluntary guilty plea.

**B. Motion to Amend**

Petitioner moves to amend his petition to add the claim that counsel was ineffective in failing

to argue for an adjustment under U.S.S.G. § 5G1.3 which would have enabled him to receive 278 days credit for the time spent after his federal arrest but before his sentencing. Petitioner insists that amendment is proper in this case for three reasons. First, he argues he should be allowed to amend as a matter of course. Second, he argues the Amended Petition is itself timely, notwithstanding the timeliness of his original Motion to Vacate. Third, he asserts his Amended Petition relates back to his original petition. After setting forth the general rules relating to Motions to Amend under Section 2255, the Court discusses Petitioner's arguments in turn, followed by a discussion about equitable tolling since the time limits set forth in Section 2255(f) are not jurisdictional.

As a general proposition, Rule 15 of the Federal Rules of Civil Procedure applies to Motions to Amend under Section 2255. <u>See</u>, Rule 12, RULES GOVERNING § 2255 PROCEEDINGS,[3]; <u>United States v. Gonzalez</u>, 592 F.3d 675, 679 (5th Cir. 2005) ("It is well settled that Rule 15 applies to federal habeas proceedings"). Under Rule 15, where leave is not a matter of right, "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Rule 15 envisions "' a liberal policy of permitting amendment.'" <u>Turner v. City of Taylor</u>, 412 F.3d 629, 646 (2005) (citation omitted). Nevertheless, "[a] motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'" <u>Midkiff v. Adams County Reg. Water Dist.</u>, 409 F.3d 758, 767 (6th Cir. 2005) (citation omitted). As in other civil cases, futility exists where the statute of limitations has run, and the new claim does not relate back to the original claim. <u>See</u>, <u>Howard v. United States</u>, 533 F.3d 472, 475 (6th Cir. 2008).

---

[3] Rule 12 provides that "[t]he Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provision or these rules, may be applied to a proceeding under these rules."

### 1. Amendment as a Matter of Course

Petitioner first argues he is entitled to amend as of right. The entirety of his argument on this score is that the "Government's filings, to date, have been essentially motion practice," and the "Government has not submitted any evidence, filed any plea admitting or denying specific facts, nor has the Government responded to evidence filed by Petitioner." (Docket No. 49 at 7).

Even though Rule 15 generally applies to Section 2255 Motions to Vacate, Rule 15(a)(1) arguably does not "because the filing of a petition or section 2255 motion does not automatically trigger an obligation by the respondent to respond to that pleading; indeed, the need to respond arises only after the trial court has reviewed the initial pleading for facial adequacy and has directed the Clerk of the Court to serve it on the respondent, and has directed respondent to respond to it." Soler v. United States, 2010 WL 4456343 at *2 (S.D.N.Y. Oct. 18, 2010). In any event, the Government has filed a responsive pleading for purposes of Section 2255.

In his June 18, 2010 Order, Judge Echols ordered the Government to file "its complete response to the § 2255 motion," to include addressing "the merits of Hodge's ineffective assistance claim." (Docket No. 10 at 3 & 4). The Government did so by filing its July 14, 2010 "Response to Petitioner's Motion to Vacate." (Docket No. 13). That response fulfilled the Government's responsibility to file a responsive pleading within the meaning of Rule 5 of the RULES GOVERNING SECTION 2255 PROCEEDINGS because it addressed the merits of Petitioner's Motion to Vacate.[4] Therefore, Petitioner is not entitled to amend as of right.

### 2. Timeliness of Amended Petition

---

[4] So far as relevant, Rule 5 requires only that "[t]he answer must address the allegations in the motion" to vacate. Rule 5, RULES GOVERNING SECTION 2255 PROCEEDINGS.

Petitioner next argues the Amended Petition is timely, regardless of whether his original Motion to Vacate was timely. In this regard, he claims it was not "[u]ntil March 30, 2010" that the BOP made its recalculation regarding credit for time spent prior to sentencing, and, thus, the limitations period began at that point because, until then, he "had no claim." (Docket No. 49 at 5). The Court disagrees.

Petitioner's present claim is not that the BOP did or did not properly grant him credit. Instead, his claim is that counsel was ineffective, and the facts which serve as the basis for that claim occurred at the sentencing hearing (or in negotiating the plea agreement) when counsel failed to request an adjustment under U.S.S.G. § 5G1.3. That the failure may have had unexpected ramifications later on is irrelevant because "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000); see also, Escamilla v. Jungwirth, 426 F.3d 868, 871 (7th Cir. 2005) ("the adequacy of counsel's performance must be assessed in light of what was actually known (or reasonably knowable) at the time counsel acted, rather than what comes to light years later."). Thus, under 28 U.S.C. § 2255(f)(1), Petitioner's claim of ineffective assistance of counsel for failing to secure an adjustment under U.S.S.G. 5G1.3 began running December 14, 2007, the date his conviction became final. See, United States v. Ruby, 2010 WL 1403950 at **3-5 (D. Vt. Feb. 2, 2010) (where petitioner argued counsel was ineffective because he "failed to properly address under § 5G1.3 pretrial custody time," limitations period began running when conviction became final, not when BOP informed petitioner of its calculations).

### 3. Relation Back

Petitioner argues that if he is not allowed to amend as of course, and if his amended pleading itself is untimely, amendment is appropriate because his new claim relates back to his original filing. Leaving aside this Court's conclusion regarding the untimeliness of the original Motion to Vacate,[5] Petitioner's Amended Petition does not relate back.

Under Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). However, to arise out of the same conduct, transaction, or occurrence, the claims must be "tied to a common core of operative facts." <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005).

In this case, Petitioner's original claim was that counsel was ineffective because he "failed to raise IAD violations." (Docket No. 1 at 4). In the "supporting facts" section of his Motion to Vacate, Petitioner wrote:

> Petitioner was serving a state sentence[,] state of Tennessee. Prior to completing state sentence, Petitioner was removed from state custody. Petitioner pleaded NOT guilty and was returned back to state custody. Counsel failed to raise the issue of a violation of the I.A.D.A. which would have been a valid reason for dismissal of the indictment in said case pursuant to <u>Alabama v. Bozeman</u>, 533 U.S. 146 (2001).

(<u>Id</u>.). Petitioner's sole request for relief was that the Court "vacate judgment and dismiss indictment." (<u>Id</u>. at 13).

The Amended Petition presents the markedly different claim that counsel was ineffective in failing to secure credit for time spent in custody after Petitioner's federal arrest. The former claim relates to pretrial practice, while the latter relates to activities taken or not taken during plea

---

[5] The Court notes that, under Petitioner's own assertion in his original Motion to Vacate as to when the statute of limitations began to run, his Amended Petition is untimely because he was placed in federal custody in September 2009, and his "Amended Petition" was not filed until February 28, 2011.

negotiations or at sentencing.  True, both the initial complaint and the proposed amended complaint arose in the same criminal proceedings, but that is not enough.  Mayle, 545 U.S. at 657-58. Nor is it enough that in both his original Motion to Vacate and in his Amended Petition, Petitioner claims that counsel was ineffective.  Dodd v. United States,  614 F.3d 512, 515 (8th Cir. 2010); United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005).

Instead, the original and amended allegations must be of the "same time and type," Howard, 533 F.3d at 476,  because "the rationale of Rule 15(c) is that a party who has been notified of litigation concerning a *particular occurrence* has been given all the notice that statute of limitations were intended to provide."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984) (emphasis added).  Here, even liberally construing the original *pro se* Motion to Vacate as required by Haines v. Kerner, 404 U.S. 519, 520 (1972), the claim of an IAD violation and a failure to obtain a credit for time served can hardly be said to be related.  The alleged ineffectiveness is temporally separated, the factual underpinnings are different, and the requested relief is different.

### 4. Equitable Tolling

In Dunlap v. United States, 250 F.3d 1001 (6th Cir. 2001), the Sixth Circuit "definitively" held that "the one-year limitation period applicable to § 2255 . . . is a statute of limitations subject to equitable tolling," and not "a jurisdictional prerequisite which bars review by the federal courts if it is not satisfied."  Id. at 1004.  Nevertheless, the Sixth Circuit "'has repeatedly cautioned that equitable tolling relief should only be granted sparingly.'" Connolly v. Howes, 304 Fed. Appx. 412, 417 (6th Cir. 2008) (quoting, Cook v. Stegall, 295 F.3d 517, 521 (6th Cir.2002)).

In determining whether to apply equitable tolling, courts consider the following factors: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive

knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." Solomon v. United States, 467 F.3d 928, 933 (6th Cir. 2006). "These five factors are not comprehensive, nor is each factor relevant in all cases." Id. Rather, "'[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis.'" Id. (citation omitted).

"In essence, the doctrine of equitable tolling allows federal courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" Keenan v. Bailey, 400 F.3d 417, 421 (6th Cir. 2005). Petitioner has the burden to persuade the court that he is entitled to equitable tolling. McSwain v. Davis, 287 Fed. Appx. 450, 455-456 (6th Cir. 2008) (collecting cases).

In this case, the only conceivably relevant Solomon factors are Petitioner's insistence that he has diligently pursued his rights, and the Government would not be prejudiced by allowing this case to proceed. However, "[t]he absence of any prejudice to the opposing party "is a factor to be considered only after a factor that might justify tolling is identified,'" Pinchon v. Myers, 615 F.3d 631, 641 (6th Cir. 2010) (citation omitted), and so the Court turns to Petitioner's alleged diligence.

According to Petitioner's declaration, upon being transferred to federal custody in September 2009, Petitioner inquired into his release date, was informed the next month that it was not until March 2015, and began an administrative appeal process through the BOP which did not get resolved until March 30, 2010. (Docket No. 53-1 ¶¶ 3-6). Accepting all of this as true for present purposes, this does not speak to the issue of ineffective assistance of counsel, and there is no suggestion that Petitioner was prevented from pursuing his ineffectiveness claim while credit

issue churned its way through the BOP.

"[E]quitable tolling is only applicable where there is something that actually prevents a defendant from filing" and "does not apply where a defendant simply defers filing a section 2255 motion to pursue other avenues of relief." Reyes v. United States, 2009 WL 274482 at * 4 (S.D.N.Y. 2009); see, Ruby, 2010 WL 1403950 at **4-5 (rejecting petitioner's argument that equitable tolling was warranted during period where, like here, petitioner pursued BOP remedies after judge recommended credit be given for time served); Reescano v. United States, 2008 WL 5071960 at *3 (E.D. Tex. 2008) (rejecting argument that limitations period should be equitably tolled while petitioner was in state custody and exhausting his administrative remedies with BOP). Petitioner has failed to show that equitable tolling is appropriate in this case.

## C. Merits of Petitioner's Amended § 2255 Petition

Notwithstanding this Court's conclusion that Petitioner's request to amend is futile because of the statute of limitations governing proceedings under Section 2255, the Court also finds that the Amended § 2255 Petition fails on the merits because Petitioner has not established ineffectiveness of counsel within the meaning of Strickland for the claim presented in that filing. As already observed, the Strickland test has two components – ineffectiveness and prejudice – both of which must be established by Petitioner. Even assuming for the sake of argument that counsel was deficient because he failed to make a motion under U.S.S.G. § 5G1.3 at the sentencing hearing, Petitioner cannot show prejudice.

With regard to the prejudice prong, Petitioner argues that prejudice exists because he was not  given credit for the 278 days between December 20, 2006 and September 24, 2007. This, of course, presupposes Judge Echols would have included in the "Judgment in a Criminal Case" credit

for that time, something Petitioner insists was likely since Judge Echols did, after all, recommend that credit. On the other hand, the Government argues Judge Echols was unlikely to further reduce Petitioner's sentence given Judge Echols' observation (both at sentencing and in his Statement of Reasons) that Petitioner's criminal history calculation was under-represented and, therefore, by hypothesis, the 79-month period of imprisonment was the minimum punishment Judge Echols was willing to impose.

Although it might be interesting to attempt predicting what Judge Echols would have done were he presented with a § 5G1.3 motion at the sentencing hearing,[6] the Court is of the opinion that the parties' exclusive focus on the possible outcome of the sentencing hearing is misdirected. For counsel to have secured the 278-day credit, he would have had to seek an adjustment under § 5G1.3. See, United States v. Brown, 417 Fed. Appx. 488, 493 (6th Cir. Mar. 30, 2011) (§ 5G1.3 provision for credit is an adjustment). However, the Plea Agreement listed the agreed-to adjustments under the Guidelines, including a three-level reduction for acceptance of responsibility, a two-level increase because the firearm was stolen, and no enhancement because the gun was used in relation to another crime. The Plea Agreement also made clear that it was the entire agreement between the parties and that no changes would be made unless the changes were in writing.

Since "[p]lea agreements are contractual in nature," United States v. Bowman, 634 F.3d 357, 360 (6th Cir. 2011), they "are to be enforced according to their terms" and in accordance with

_____

[6] This could be all the more interesting since § 5G1.3(b) "actually uses mandatory language." United States v. Brown, 417 Fed. Appx. 488, 493 (6th Cir. 2011). Query whether Judge Echols would have accepted a binding agreement as to sentencing where Petitioner's sentence would have been effectively reduced by nine months for time spent in state custody after Petitioner's federal arrest, or whether the Government would have entered into such an agreement in light of the "lengthy and intensive" negotiations which led up to the Plea Agreement, the fact that Petitioner would not be sentenced to the high-end of the applicable range, and the concession that there would be no enhancement for the firearm's use in relation to another felony.

traditional principles of contract law. <u>United States v. Moncivais</u>, 492 F.3d 652, 662 (6th Cir. 2007). "'In applying these standards to a plea agreement, the court must determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty.'" <u>United States v. Bickerstaff</u>, 2000 WL 1529812 at *3 (6th Cir. 2000) (citation omitted). Here, Petitioner understood that, by pleading guilty, he would waive his right to a jury trial in exchange for a 79-month sentence, a sentence which would run concurrent with the state sentence he was then serving. In this sense, Petitioner was not prejudiced because he received what he bargained for, and Judge Echols' recommendation about credit was an added potential bonus even though, in the end, it did not materialize.

It appears that if counsel was arguably ineffective, any ineffectiveness would have been related to negotiating a Plea Agreement that did not incorporate an adjustment under § 5G1.3, and/or related to advising his client to plead guilty without the inclusion of such a provision, assuming the Government would even agree to such a thing. However, "[i]n order to satisfy the 'prejudice' requirement in a plea agreement context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" <u>McAdoo v. Elo</u>, 365 F.3d 487, 488 (6th Cir. 2004). (quoting, <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)). Further, that "assessment of prejudice must include a prediction of the likely outcome at trial." <u>Dando v. Yukins</u>, 461 F.3d 791, 798 (6th Cir. 2006).

Here, it is unlikely Petitioner would have prevailed at trial. According to the Plea Agreement's recitation of the facts (which Petitioner agreed was correct), Petitioner was caught in possession of a stolen 9mm Intratec pistol. With multiple felony convictions on his record, Petitioner faced a statutory maximum of 10 years, significantly more than the 6½ year sentence he

received.  Additionally, had Petitioner gone to trial, he likely would have forfeited the three level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1,[7] meaning that, with an adjusted base offense level of 24 and a Criminal History Category V, the advisory guideline range was from 92 to 115 months.  From both the low end through the high end of this advisory range, there is approximately a 21 month increase over the 70 to 87 range under which Petitioner was sentenced. Petitioner does not suggest that had he been aware of counsel's alleged ineffectiveness and what it meant in terms of credit, he would have opted to go to trial.  See, United States v. Garofolo, 2011 WL 2175499 at *2 (6th Cir. June 6, 2011) ("assertion that a better plea negotiation would have allowed counsel to advocate for a lower sentence . .  does not establish prejudice, as it is relevant only to sentencing and not whether petitioner would have pled guilty").  He certainly does not contend that he would have traded the higher guideline range for the one that he received.  See, Bethel v. United States, 458 F.3d 711, 720 (7th Cir. 2006) ("We doubt [defendant] would have traded the three-level acceptance of responsibility reduction for the privilege of a trial with a virtually certain result.").  As such, Petitioner cannot show prejudice in relation to the credit issue.

**D.  Motion for Evidentiary Hearing and/or Oral Arguments**

Under Section  2255, a petitioner is entitled to a "prompt hearing," unless "the motion and the files of the records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(d).  "[T]he burden is on the petitioner who seeks an evidentiary hearing in proceedings under 28 U.S.C. § 2255 to establish his entitlement to such a hearing by showing the existence of a factual dispute."  Cope v. United States, 282 Fed. Appx. 445, 451 (6th Cir. 2008).

---

[7]  The Application Notes to this guideline indicate that "this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential elements of guilt," but, "[i]n rare situations" may be applicable for a defendant who insists on going to trial to preserve certain legal issues.  U.S.S.G. § 3E1.1, App. Note 3.

In this case, there are no disputed facts relevant to the statute of limitations issue or the merits of Petitioner's claims, and, therefore, no evidentiary hearing will be held. Nor will the Court grant Petitioner's request for oral arguments because the arguments related to the pending motions and the merits of Petitioner's claims have been exhaustively briefed in the numerous filings by both Petitioner and the Government.

## III. <u>CONCLUSION</u>

On the basis of the foregoing, the Court will deny Petitioner's Motion to Amend because neither the initial Motion to Vacate or the Amended Motion were timely filed. As an alternative ruling, the Court will deny Petitioner's Motion to Vacate, Set Aside or Correct Sentence and his Amended Section 2255 Petition because he has failed to establish ineffective assistance of counsel. Finally, the Court will deny Petitioner's request for an evidentiary hearing and/or oral argument.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE